United States v. Hall. Mr. Gill. Thank you, Judge. May it please the Court. My name is Paul Gill. I'm with the Federal Public Defender here in Richmond. I represent Kevin Hall on this appeal. Mr. Hall urges reversal of the District Court's decision to vacate its original sentence of probation and impose a new sentence of 21 months' imprisonment on jurisdictional grounds. I have three basic points to urge upon the Court today. First, Rule 35A, Clear Error, does not encompass a District Court reopening the record to take in new evidence to justify a different sentence, whether for fraud or any other reason. Second, the acknowledged errors and mistakes it applies to, again, are not errors contingent on facts not existing or patent in the original record and found only after the original sentencing. And third, there exists no other statutory or inherent authority of the Court to support the District Court's authority as exercised in this case. With respect to the meaning of Clear Error within the meaning of Rule 35A, I'd emphasize three things. Before you get to that, so is it your position that notwithstanding – were you the defense counsel below? I was, Judge. Okay. Notwithstanding your consent to the resentencing, that that doesn't matter? Judge, I would agree, as I think the government briefing in this case points out, that I did at one point say I agree with the government's – I think to quote myself, I have no issue having reviewed pertinent authorities with the jurisdictional proposition that the forged letter authorizes the Court to reconsider sentencing. I would also fully agree with the government's observations that Rule 35A is a – it's a jurisdictional matter and there is no waiver of the jurisdictional matter there. With respect to the issue of whether that means somehow this is an acknowledged error or mistake, I think, again, that misperceives the meaning and the very limited scope of Rule 35. And then going back to what the Advisory Committee said and what it did in terms of adopting the language that now appears as Rule 35A is significant. First of all, of course, it did say it intended to codify in that rule the holdings of two cases, RICO, a Second Circuit case, and Cook, a case actually from this Court. Second, it indicated that its intent was for the rule to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action. The initial sentence was a sentence of probation, correct? That's correct, Judge. So why doesn't 18 U.S.C. Section 3562, imposition of a sentence of probation, apply and allow the judge to revoke the probation and re-sentence him? Well, Judge, I guess I'd say two things. First of all, of course, that is not, in fact, what the Court did here. It did not, in fact, revoke probation and, in fact – Or modify. It says modify or revoke. That's correct. And so that certainly wasn't the act done by the Court in this situation. So I guess that would be the first thing. The second thing would be I think it would be problematic to revoke someone for a probation violation based on something he did or did not do before he was placed on probation. So that's like saying you have a bond violation because you tested positive on your first drug test. Well, what always happens is, you know, that's presumed that's pre-bond. So we can't prove that the day you're put on bond and you test positive that you took drugs after you were placed on bond that rejected your ability to take drugs. Well, I suppose, though, that if the defendant had committed a crime before the imposition of the sentence and then is later convicted, that wouldn't bar the district court judge from revoking probation. No, Judge, I beg to differ. If one is charged with a crime before one is put on probation and then convicted of that crime after, it is still conduct that predated your being under the authority of the Court's probation order. So, again, I think that the option you've pointed to, Judge Thacker, is not something that the Court could have done. And, of course, it is not, in fact, what it did. When you look at Rule 35, it says resulted from arithmetical, technical, or of a clear error. So the words arithmetical and technical in Rule 35 seem to suggest a scrivener's error or some kind of technical computational mistake. But then that means the phrase of a clear error must mean something more. And it's a sort of a catch-all phrase in some way. And you certainly don't want to open it up, but there's a safeguard against opening it up with the presence of a 14-day limitation period. But it seems to me it was deliberately left a little vague. It's kind of a catch-all, sort of omnibus phrase, but it uses the word other clear error. Maybe that doesn't mean additional information that comes to light. The word error seems to suggest that it was an error that occurred during the sentencing rather than additional information that came to light after the sentencing. Do you agree with that? No, Judge, because, again, the language of the Advisory Committee makes very clear how narrow it is. And, in fact, the Advisory Committee in explicitly rejecting a proposal to have allowed the reopening of the record essentially based on new evidence to bring a Rule 35a motion. But is this really new evidence? Let's say something comes to light, irrespective of a forged letter that indicated that the defendant had been skipping the alcohol anonymous letters or the sessions or that he was seen actually having a beer or whatever. Then that would seem to me to be the kind of thing that should not open a sentence. But isn't that different in kind from submitting before sentencing, prior to sentencing, a forged letter to a court? Judge, it may be different in kind. It's not a material different in kind. And, again, I would point to, again, not only… Well, why would it be a material difference?  And it's also different from additional information that comes to the court just in the normal course of things that should have been provided at sentencing. But those are different from actually submitting a forged document to the court, isn't it? I mean, this is… But, Judge… What we worry about is that you render this decision. Our job is to get to the truth of the matter, and the district court's job is to make an accurate determination of what kind of sentence this person should get. So accuracy and truth-finding is at the core of what we do. And are we just sort of granting, you know, setting up some sort of template? Well, here's how you game the system, and here's how you can do it. Submit a forged letter to the court or get somebody to submit a forged letter to the court, and if you slip it by, there's nothing they can do about it. Well, I suspect he's opened himself up now to contempt or perjury prosecution. Right. And, Judge, I think what I'd say is, first of all, it's the court's duty in terms of interpreting Rule 35 to interpret it based on its language and the prior history of it and its holdings and otherwise. The other thing I'd point to is, as Judge Thacker pointed out, there are other methods of addressing this kind of conduct. The third point I'd make before I mention a case from this own court that I think is significant. But the third point I'd make is that if we adopt some sort of rule that says, well, this is different, we're going to carve out this rule, never mind the fact that other than an unpublished decision for Tino, which I'll rest my briefs on in saying is really not well considered, there has never been a court to carve out that exception. And if we carve out that exception, then what we're essentially saying is that Rule 35A means that the original sentencing is like a practice or dry run. And as long as sometime within 14 days thereafter, you can do further investigation and figure out that something that the other side proffered or presented to the record is not really accurate, well, again, I think that's a problem. Now, the case out of the Fourth Circuit, Fraley, is a Fourth Circuit publisher. It's not what we're talking about doing, just bringing up some sort of additional information about the defendant's background or whatever. I mean, honestly, that's not a fair characterization of what happened here. But, Judge, there's no mistake on the original record as to what the record was. And, again, RICO, for example, there was no dispute that the actual record at the original sentencing reflected that there was a binding plea agreement with a binding, accepted and approved by the court, three-year prison sentence in it. For whatever reason, when it came to the original sentencing, I think that, as I recall it, the prosecutor was unfamiliar with the plea agreement. The court had forgotten the terms of it, and the court construed it as not a three-year agreed prison sentence, but a cap of three years to impose something lower. When the government recognized, oh, well, this is not what happened, it brought that to the attention of the court. Again, there's no further fact-finding necessary to establish in that case that the record as originally made included an absolute agreement to impose three years. That's the kind of thing the advisory committee wanted Rule 35A to cover. The Cook case out of this court involved a case where the district court correctly articulated, there was no dispute about it, three different options it had for sentencing. It said it was going to pick option number three, and then for some reason it actually imposed a sentence inconsistent with that announcement, and, in fact, inconsistent with any of the three available options under the then-mandatory guidelines. Again, neither of those cases involved looking to facts first discovered or evidence first seen after the original sentencing. In Fraley, and that is a case from this court, what happened there is the district court initially imposed 10 months straight imprisonment on the defendant. The defendant then later said, well, you know, again, I'd really like to get less time because my father is sick. The court, in addressing the substance of a Rule 35 analysis, said, to quote, here it is apparent from the record that the district court, once confronted with the new evidence of Fraley's family business situation, simply changed its mind about the continued appropriateness of Fraley's sentence. The court identified no error in Fraley's original sentence, and consequently it needed no correction. The court reiterated that, again, the history of the rule is that it's limited to the kind of thing that happened in Rico and Cook, and this is simply not what happened here. It chose to announce, based on its understanding and what actually was the record at the time, what the sentence would be, and it couldn't just change its mind later because someone brought it new evidence. I mean, it didn't just – I understand your larger point about the finality of sentences, but you keep saying, well, the court just changed its mind. It didn't change its mind. I mean, it thought a different sentence based on the – it didn't think that if the facts that had been presented to it in the prior sentencing were as they had been represented, the court was perfectly content with that. It didn't revisit that. It didn't change its mind. It's only when it learned that it had been deliberately defrauded that it revisited the question. It didn't just wake up one day and say, oh, gosh, I think I gave this individual too lenient a sentence. So to say it's just changed its mind, it didn't change its mind. It was perfectly happy and continued to be perfectly happy with the sentence, the relatively lenient sentence it is. He gave the person a break even in light of the fact that he felt that the record indicates he lied his way all through the proceeding. He still got a break with a pretty darn good sentence. And the district court never changed its mind about the propriety of what it did if it had been dealt honestly with. Judge, again, the issue is whether the district court – whether the district – what the district court did here was based on a clear error in a construction of the record or the law at the original sentencing. Putting a forged letter into a record is not a clear error. Is that what the holding is going to be? That's correct, Judge, because, again, from the case law, from this court, from other courts, the Second Circuit, from the Fifth Circuit, from other – the Sixth Circuit. I mean, there's a Sixth Circuit case fair where the government actually conceded to – on appeal – I'm sorry – to the district court that to reopen the hearing and consider new evidence is not something Rule 35A allows. I know, but nobody disagrees with that. Nobody disagrees with those sentences, with those general statements. But this is – this is not just new evidence. It was a prior piece of evidence that was an utter and total forgery. Judge, if this court intends to carve out some sort of forgery exception to Rule 35, it's an unprecedented act. There's been no published opinion to do that. And, again, 14-0, I think, is a meager read to rest its laurels on. It's simply not the kind of error that Rule 35 contemplates. I mean, again, I come back to the language of Rule 35. You have arithmetical and technical errors in one hand, but then they could have ended it there, but they didn't. The drafters of the rule went on to say other clear error. That's correct. You have to subscribe some meaning to that other than arithmetical or technical. Right, and that meaning should be drawn – Judge, I see my time is up. I'd just like to respond to your question, and I'll sit for rebuttal. The meaning of the term still should be drawn from what the advisory committee says, the history of the rule, and the purpose of the rule, as well as its application. I'm not going to let this sentencing drag on in some kind of indeterminate state because there's a 14-day limit to even a Rule 35 revision. It's not something that says, oh, you've got several months. Judge, again, I say I'm past my time. I'll defer to rebuttal. Mr. Cook? May it please the Court, Richard Cook for the United States. I'd like to start with the Fraley case, which I think is illuminating in the context of this case. In Fraley, the defendant was coming in there to get a new sentence under Rule 35 when he was bringing up evidence of a problem with family business and saying that's something new that I want to get a lower sentence because of that problem. And that really doesn't fit with the plain language of the rule, and the language I particularly like to focus on in 35A is that it says the court may correct a sentence that resulted from arithmetical, technical, or clear error. And a defendant like Fraley, who's coming in saying, look— What was the clear error here? Here, it's the judge believed that the letter from the AA sponsor was genuine, and it was not. And he, in granting the Rule 35A motion and increasing the sentence there, he said, look, I had relied on that letter. It made a difference. And then he received new factual information about the letter. So how is that not foreclosed by the committee notes here that explain you can't use new factual information to basically resentence? I think that that is reading too much into that particular passage in the committee notes because there, what the committee notes were talking about was a proposal to have a 120-day period like the old Rule 35 before the Sentencing Reform Act where you could come in and argue for a lower sentence. And it said, we think that having in the new Rule 35A a similar period to come in and argue would be returning us to the old practice that we don't want to do. And so they weren't talking about a situation where you had new facts that met a now clear error standard. They were talking about a open-ended 120-day period to come in, and I have another thought, here's something else I want you to consider. And that was definitely not what the new change to the new rule, the Sentencing Reform Act, were contemplating. I don't read that committee note as saying, look, facts are off the table. And the text of the rule certainly doesn't draw a fact and law distinction. I think that there's a useful analogy to be drawn between the treatment of guideline error here and the treatment of facts in light of the background that there isn't a fact-law distinction in the text of the 35A. And here's the point about the guideline error. The committee notes say about guideline error that the rule is, quote, not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. That language might lead you to think that you can't come in with guideline error under 35A. Well, let me ask this. So is it simply the way in which the district court judge was had in this case that makes it particularly egregious so that the rule should apply? So let's say, for example, the probation officer makes a mistake in the report, the PSR, and omits a conviction that would change the guidelines range, affect the guidelines range in some way had the judge been properly apprised of the defendant's record. Within the 14-day window, the government comes back and says, Oops, Your Honor, it turns out that we didn't get it right. What happens in that case? Right. I think that one is close. I think that that would be the kind of thing that, I mean, let's suppose there was a conviction that everyone believed applied to the defendant, and it clearly did not, and it changed the guideline range. You're changing my hypothetical. Answer my question. I'm sorry. I hate to do it, but could you tell me again? Sure. So the PSR omits a conviction, a defendant's conviction, that would have impacted the judge's sentencing decision. Not intentional, simply a mistake. And the government then seeks to reopen the proceedings within the 14-day window. What's the result in that case? I think that that's probably not going to meet the test in the way that ‑‑ Why is that? Because it's ‑‑ The judge obviously is sentencing on a mistaken record, a mistaken impression of the defendant. Is it simply because the defendant was particularly sinister and malevolent in this case that makes a difference? No, I think it's the reliance in the result. So in your example, it's not clear that the district court relied on some particular error that resulted. I mean, the district courts rely in every case on the PSR in order to achieve the right result. The PSR was mistaken. Well, if that's the case, then I think it would. I mean, again, that's where I go to the language resulted. I'm not sure that that's what Rule 35 was. I mean, it may be ‑‑ I wouldn't call it an absurd result. It's not the optimal result in this case if we were to reverse the district court judge. But you're not left ‑‑ the government is not left without a remedy. In fact, you've highlighted in your brief that you intend to exercise the remedies if this case doesn't go your way. Sure, yeah. I mean, to be clear, I mean, this defendant got a pretty good deal on not being prosecuted for new crimes. And so a reversal is hardly, you know, a huge loss to the government. Frankly, going forward, this is a defendant who would be beneficial if people knew that he was willing to engage in the kind of conduct here, and people knew that via new convictions. But I think that this does fall within the scope of 35A, and it doesn't ‑‑ you don't want to render the rule useless. And to amplify on the example you were giving me about criminal history, let's suppose that the district judge did calculate the criminal history as, say, five. And that was definitely wrong because there was a conviction that he thought counted that just flat out didn't. That would be definitely reversible error in the context of the case. Let's suppose that, you know, it's a guideline sentence and the judge is going with the guidelines. 35A is meant to allow a district judge to fix that problem, avoid the expenditure of judicial resources from the appeal. Does it matter if Judge Diaz is hypothetical, does it matter whether the government made a mistake or was negligent or whether the problem was one that was initiated by the defendant? I don't think it does. I mean, I think the limitation is the clear error standard. If it doesn't matter whether the government made a mistake in the PSI or the defendant, what is the limiting ‑‑ where is your limiting principle? If we recognize this, how would you draw the limiting principle so that we just don't open up sentences to revision on the basis of additional evidence? How would you phrase it? I think there are a series of limits that apply. The first is this resulted from point about the language that you really have to have had it be a point that the district court relied on in making the sentence. So new evidence about mitigating factors, new evidence about aggravating factors, those don't count because those don't get you within the rule because the judge didn't rely on that stuff. And so the sentence can't be said to have resulted from an error on that point. It's just something somebody could have but didn't bring up previously. So that would be limitation number one. Limitation number two is much like in the context of guideline error where the committee notes say, look, if you've got just asking the judge to reconsider application or interpretation of the guidelines, that doesn't get you to clear error. But we know from cases like Cook and Ward, the guideline error isn't balled off from correction. And so in Cook, which is the case that led one of the cases that led the committee to introduce 35A, they said there was a guideline error. Likewise, in Ward, it was a guideline error that was corrected under 35A properly. And as I read the cases, what they're saying is, look, you've got a gross error, or what Ward referred to as a misperception of the governing law. That would be an error under the guidelines that you could come in and fix. Whereas if you had a hearing where you debated a point on application of the guidelines, the court considered it, weighed the factors, and reached a conclusion about how to construe the guidelines, 35A is not a chance to come in and re-argue the point. Suppose we have an error that would add additional evidence that would redound to the defendant's favor, that there was mitigating evidence that came in after the sentencing proceeding, and it may have led the judge to impose a more lenient sentence. Is that different from here? In theory it could be, but again, I think that sounds to me like the Fraley situation, if I have something new that wasn't considered. Even if the defendant, by due diligence, couldn't have considered it? Yeah, I think that's right. If the defendant didn't know of an exculpatory witness or a mitigating circumstance in a sentence. Let's say it's one of these leadership enhancements, and a witness turns up who says, wait a minute, the defendant really didn't have this kind of role in the conspiracy. I was the one that performed the kinds of duties that you thought the defendant was performing when you gave them a three-level, 3B enhancement. So that evidence comes in, it would arguably redound to the defendant's benefit and argue for a more lenient sentence. Does that make a difference? Can the district court consider that under 35A? I think that potentially it could. Let me maybe take a simple example. The language of the rule doesn't seem to draw a distinction. Suppose you had a leadership enhancement, like you said, and it was supported by a co-conspirator who testified at sentencing and provided the factual basis for the enhancement, and then within the 14 days the witness says to the government, I lied. We believe that it's agreed upon. That witness lied. If the case were to go up on appeal, we would confess there that that was an erroneously applied enhancement. There would be a remand for resentencing. That would be analogous to the forged document here. But the point you're making is that the rule does not distinguish between evidence that comes in to the detriment of the defendant  Right, I think this is a procedural rule that applies equally to both sides. It applies across the board. The point you're making is that where there's a forged letter or someone deliberately lied and tells the court there, it could work the defendant's benefit there, and there wouldn't be the alternative of a perjury prosecution in the case because it wasn't the defendant that lied. It was the witness at sentencing that lied. So you wouldn't have the alternative. You'd have only Rule 35A. And your point is that whether it works to the benefit or the detriment of a defendant, if somebody lies or somebody submits forged documents, that that's within the scope of clear error, and there will be many instances where the alternative of a perjury prosecution simply isn't available, and you don't want to simply provide a clear pathway for corrupting a judicial proceeding when integrity is our capital. It's our stock in trade. I agree, and I think that the screen here is the clarity of the error, and the court doesn't have to say anything terribly sweeping here. I mean, this is a case of an undisputed and confessed error, and how you might deal with a situation where that was not the case, that could be a harder, different question for another day. But the rule does not itself draw a fact-law distinction. And I would amplify on a point that Your Honor Judge Wilkinson made about, you know, we have a statutory canon, and I may not be pronouncing it right, because the Latin adjusum generis. And, you know, the rule there is you have a series of two or more specifically enumerated items followed by a general term. You generally interpret the general term to mirror or be of a similar kind as the enumerated items. You look at the rule here, it says arithmetical and technical, and so you think, well, it's going to be something really narrow. But that canon doesn't get applied so constricted that you end up making terms redundant. Well, you've got a phrase which is an omnibus phrase. It was put in the rule for a reason. Right. And when you look at the drafters of the rule, they meant clear error to mean something more than a scrivener's error or something more than was arithmetical or something more than was technical. Exactly. You know, it's not clear exactly what the parameters of that are, and I suppose that needs to be sketched out on a case-by-case basis. But what you're saying is that, look, the integrity of the judicial system is on the line here. There are going to be cases where the alternative avenue of a perjury prosecution or something is not available, and we want to be very that the rule does have a 14-day limit and that 14 days does strike something of a balance between indeterminacy of sentences and, on the other hand, within that small window, allowing correction for errors that go to the very heart of what the judicial process is supposedly about. Does that understand what you're saying? Yeah, I agree with that completely. Let me ask. I'll make one point and then ask you a question. So I recognize that the integrity of the process is critical. Judge Wilkinson is absolutely correct that that's our stock and trade. But we do oftentimes have to make compromises in our system in order to promote what we think are higher values. So on the merit stage of a case, if there's a perjurious witness or some other fraud on the court that results in an acquittal of a defendant, we don't allow a do-over in that context. There's no statutory provision that allows that. So what role is there in the adversarial process for this? I mean, what role do you have as a government attorney, defense lawyer, to police this kind of practice? I mean, somebody must have been presented this letter. Maybe it was the day of the trial. You may not have enough time to investigate. But it seems to me that one remedy is to engage in the adversarial process and test the evidence. Well, that is the case. And if this court reverses, that process will happen. I mean, I would point out as a practical matter, one of the backgrounds here is, you know, if we're going to do a prosecution under 1001A3. Well, I'm not talking about a prosecution. That's obviously a remedy. But I'm talking about during the sentencing proceeding itself. It seems to me that the government has some responsibility to police the process and engage with the evidence and, you know, investigate, make sure that the evidence that's being presented is, in fact, accurate. That's certainly the case. I mean, here we know through admission that it was a forgery. So you can say that, well, it would have been better if the government had caught it beforehand. It certainly would have. But in a world of scarce resources, a sponsor's letter is just something that there isn't going to ‑‑ it's just not going to happen that an agent is going to go out and in advance of a sentencing interview somebody who submits a letter like that. There just aren't enough resources around to do everything like that. The suggestion is made that you could have called the writer of the letter, the sponsor of Mr. Hall, Mr. Davis I think his name was, and brought him into the sentencing and cross‑examined him about the letter. And Judge Diaz raises a good point. I mean, if you asked Mr. Davis to come in, you could have uncovered the forgery at an earlier point in time. And now what is your response to that you just don't have the resources or that you could be expected to believe that the person who purported to write the letter would be actually writing the letter, that there's a presumption of regularity that attaches to this kind of thing. What's your response to that? Well, he was expected to be there. Granted, we didn't subpoena him. But he was expected and didn't show up presumably because he discovered the forgery and just didn't want to be there. So, you know, that's what happened. I mean, I see my time is up. But one point I don't want to fail to make before leaving is that when we do, say, a perjury or a 1001 prosecution in this case, naturally we're going to be asserting crime fraud to get privileged information because the communications between the defendant and his counsel here are going to be critical to the case. That's a pretty destructive step to be taking. It's not something that the government is likely going to want to do. But if you're going to do a case like this, it's essential because you need to know exactly what happened in him and the facts leading up to this defendant having that document filed, the statements he made at his plea hearing. And that's not something that you just want to do without very good reason. This was an intermediate step, one that I think the rule permits. Perjury prosecutions are notoriously difficult. They are. They're just very tough because the line between inadvertence and hazy recall and everything, but generically it's a tough prosecution. How did you come upon the fact of the forgery? Honestly, I don't know the answer to that. The district judge is the one who brought it up and then the defendant upon. How did the district court come upon it? I don't know. I can guess, but it's only a guess. I won't ask you to go outside the record. All right. Thank you. Judge, I'll be brief. I'll address without going outside the record your Honor's last question. What is apparent from the words that the district court used in the orders? And maybe it's unnecessary to give you this level of detail, but I was frankly out of town in Charlottesville on a different case when I first heard. That's not a bad place to be. It's not a bad place to be. In fact, I ran into your Honor while I was out there before it exploded in mistrial. But what ends up happening is what is fairly apparent from the record is that Judge Gibney, whether initiating it or not, somehow had some ex parte information indicating that, again, even though after the second sentencing it's clear this gentleman was in fact his sponsor and other things about the letter really were accurate, he discovered somehow some information that the sponsor did not in fact author the letter. That seems clear to me from the record. Is it sort of serendipitous or just happenstance? Well, Judge, again, I don't want to speculate beyond what the record is. What I'm trying to get at is an answer to the very pertinent question that my colleague Judge Diaz raised, and that is in the course of the adversary process, is it reasonable to expect that Mr. Hall's forgery of the Davis letter could have been discovered prior to sentencing? I'm very interested in the answer and your answer to that question. The government says, well, there's a presumption of regularity that attaches to these things. We thought it was going to show up. It didn't. We don't have the resources to look into, you know, many of these times in sentencing, district courts are flooded with letters speaking to how wonderful the defendant is and he doesn't deserve a harsh thing. There are all sorts of character attestations, character letters, et cetera, et cetera. The government says we don't have the resources to track them all down. Now, could this, in your view, have been discovered prior to the imposition of sentence? Judge, I think the answer to that is yes. I think that is yes in part because it was a publicly filed document well before the sentencing day. It was about a week before, as I recall. And second of all, I don't know that I would agree that in any event that Rule 35A description of and meaning of clear error is somehow affected by whether it's easy or hard through that serial process. Why wouldn't that be a factor? I mean, now, you know, I'm a little bit uncomfortable with the idea that this forged letter leaves the government with only the, essentially, with only the remedy of a perjury prosecution, which is neither in your interest nor the government's. Are there other remedies available here? Judge, it seems to me as the record indicates here, there is the remedy of contempt. And contempt is a very different and, frankly, much looser sort of proposition than perjury is. So, again, I don't know that that is a dispositive factor on what Rule 35A means, but to the extent the court is concerned about that issue, there are clearly, in a criminal proceeding, other means of essentially rectifying this or addressing whatever. But as to whether something is clear error, is it possible to take into account other available remedies or the question of whether this could have been discovered prior to the imposition of sentence? Why wouldn't that bear on the question of clear error? Judge, because I guess in part because neither the advisory committee notes nor the case law construing it suggests that. The other thing I'd point out, again, with respect to this idea. So your position is even if the government has no additional remedies and the letter is a plain forgery, that there's nothing there that can be done about it, and even if it could not have been discovered prior to the imposition of sentence, even if it's a forgery, your position is Rule 35 does not permit anything to be done about it. That's pretty stark. No, Judge. Again, what I've indicated is obviously Rule 35 doesn't allow itself to be used to rectify that situation. So in other words, when significant, if a government witness or if a witness has lied about the role that the defendant played in the offense, and it comes to light seven days after that the witness has lied and that the defendant really did not play the kind of role in the defense that the witness said he played, that the witness said, no, I played that role. The defendant really was hardly involved in that phase of the conspiracy at all. Leadership enhancement is three levels or so and would have made a material difference. Even when it works to the advantage of the defendant, there's nothing Rule 35 has to say about that. Too bad. It's done. It's a lie. We understand it's a lie, but we can't do anything about it. Judge, I think that's correct, again, because of the history and the language of the Rule and the Advisory Committee notes regarding it. Again, there has to be an error in construing the record as made. That is not what occurred here. Okay, a government witness lies. Defendant receives a harsher sentence than he should. Too bad. Right? Again, Judge, that's... That's your view. That's correct. Okay. Thank you, Judge. All right, we thank you. We'll come down and greet counsel and we will take a brief recess.
judges: J. Harvie Wilkinson III, Albert Diaz, Stephanie D. Thacker